STATE OF NEBRASKA, APPELLEE, v. LEROY CASADOS, APPELLANT.

271 N. W. 2d 849

Filed November 22, 1978. No. 41899.

Leo M. Bayer and Herbert M. Sampson III, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

KUNS, Retired District Judge.

This is an appeal from a judgment and sentence of imprisonment imposed upon Leroy Casados, the defendant, upon a verdict of the jury finding him guilty of assault with intent to do great bodily injury upon Susan Casados, his wife.

Defendant assigns the following errors for our consideration: (1) Refusal of the trial court to allow compulsory process for the attendance of witnesses from another state and the sustaining of a motion in limine to restrict the introduction of evidence of irrelevant matters; (2) the admission of testimony concerning other actions of the defendant prior to those upon which the charge was based; (3.) the reception of certain photographs in evidence; and (4) the insufficiency of the evidence to support the verdict of the jury.

In the course of preparation for trial, defendant

made a showing and request for the issuance of compulsory process to secure the attendance of witnesses from another state. The showing indicated that the testimony to be elicited from the witnesses related entirely to the question whether such witnesses had had illicit relations with the complaining witness during the period of her separation from the defendant. The trial court determined that such testimony would be irrelevant and that it could not issue the certificate required by section 29-1908, R. R. S. 1943, that the named witnesses were material. The denial of process was correct. O'Rourke v. State, 166 Neb. 866, 90 N. W. 2d 820. In the same connection, the county attorney filed a motion in limine to prevent the introduction of evidence to show the fact of illicit relations between the complaining witness and others. The motion was sustained but without a restriction upon the cross-examination of the complaining witness. The defendant claimed that he was entitled to show such matters to explain the state of his mind at the time the alleged acts were done. The ruling of the trial court did not restrict in any way the right of the defendant to show his state of mind and the reasons which he thought he had for acting as he did. It should also be noted that the complaining witness testified she had told the defendant she had had relations with two other men during the period of the separation. The rulings of the trial court were correct and did not prejudice the rights of the defendant in any way.

Defendant next assigns error in the admission of evidence concerning acts of violence by him against the complaining witness on May 1, 1977, 2 days prior to the acts upon which the charge in the information was based. The intent with which the defendant acted was an element of the crime charged. The purpose of the offered testimony was not merely to show that defendant had committed violence against another person, but rather to show his con-

tinuing attitude and feeling toward the complaining witness and the acts he had done under the influence thereof. The very fact of the continuing existence of this state of mind was most relevant to the proof of the intent charged. The scope of testimony relating to other acts and offenses by the defendant is a matter to be determined in the discretion of the trial court. The exercise of such discretion by the trial court was proper within the scope of section 27-404 (2), R. R. S. 1943. See, also, Rice v. State, 120 Neb. 641, 234 N. W. 566.

Error is further assigned in the reception of several photographs of the complaining witness. These photographs were taken subsequent to the acts of May 3, 1977, when bruises and marks resulting from defendant's acts of May 1, 1977, were still visible. The foundation for the photographs included testimony from the complaining witness describing the injuries which she had received on both occasions. In view of the fact that the jury was entitled to have evidence of such prior acts of violence, the trial court correctly exercised its discretion to admit such photographs into evidence. State v. Stephenson, 199 Neb. 362, 258 N. W. 2d 824; Glass v. Harper, 195 Neb. 724, 240 N. W. 2d 48.

Finally, defendant claims that the evidence is insufficient to support the verdict of the jury and particularly the finding of the intent of the defendant to inflict great bodily injury. The alleged assault occurred in the home of the parties and the only testimony about the acts of the defendant came from the complaining witness, the defendant electing not to testify. In summary, the complaining witness testified that defendant had lived outside the family home from the summer of 1975 until April 25, 1977; upon questioning from the defendant, she told him that she had taken part in two extra-marital incidents during the time of their separation; he continued to question her seeking to learn of other acts and

relationships; on May 1, 1977, after such questioning, he ran water into the bath tub, then grabbed her by the back of the neck, and held her head under the water, repeating the act several times; then he forced her to eat dog food and to crawl into their dog house; and, after threatening to "dunk" her again, he struck her several times with a CB antenna causing her to bleed. On May 3, 1977, after further questioning, he ordered her into the bath tub again; she fought and wrestled with him; he got a knife and held it to her throat, then dropped the knife, and began choking her; he held her head under the water again and then got a boy's belt and tied her hands behind her back, pushing hard on her arms and injuring one shoulder; and he held her head under water again. Defendant told her that he was not going to kill her but that he was going to make her lose her mind. The recital of the uncontradicted evidence makes it clear that defendant did commit an assault and the jury was amply justified in finding he intended to commit a great bodily injury. It makes no difference whether defendant's general purpose was to torture her to secure information, to punish her for previous conduct, or to undermine her sanity — he was consciously inflicting injury and pain. The total circumstances clearly establish the felonious intent charged against defendant and the evidence supports the verdict.

None of the assigned errors having been established, the judgment of the trial court is affirmed.

AFFIRMED.